## Orr, Appellant, v. Conestoga Traction Company.

*Negligence—Street railways—Whistling—Speed of car—Fright of horse—Nonsuit.*

A judgment of nonsuit was properly entered in the court below in an action to recover damages for personal injuries sustained in consequence of the fright of a horse which plaintiff was driving, where it appeared that the horse became frightened at defendant's car, which approached from behind along side the highway upon which plaintiff was driving, but that no indication of the fright of the horse was given until about the time the car passed plaintiff, and the only negligence alleged or proven was the blowing of two loud whistles as the car approached a cross road and the maintenance of a speed of twenty miles an hour, and where it further appeared that the horse was young and shied at other objects upon the same day.

Argued May 18, 1914. Appeal, No. 167, Jan. T., 1914, by plaintiff, from judgment of C. P. Lancaster Co., June T., 1912, No. 6, refusing to take off nonsuit in case of Mary G. Orr and Harry W. Orr, her husband, v. Conestoga Traction Company. Before BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass for personal injuries. LANDIS, P. J., filed the following opinion:

The present suit was brought to recover damages from the defendant company for alleged negligence, consisting of loud whistling and the running of a car at an excessive rate of speed on the public road upon which the plaintiffs were driving.

It appeared that the plaintiffs resided in the City of Lancaster, and that, on March 10, 1912, about 10:05 o'clock in the morning, they left their home, driving a young horse with a buggy attached, for the purpose of visiting Mrs. Orr's father, who resided in the country. They drove out the Willow street turnpike, in the middle of the road. Along the left hand side of the same, at

the place of the accident, ran the tracks of the Conestoga Traction Company. When they had proceeded a short distance beyond what is called Kendig's Road, a car, which was going to Quarryville, came behind them, gave two shrieking whistles, as they say, and immediately ran by them. At the instant the horse got sight of the car, it dashed over the fence. Henry W. Orr, who was the only one that testified upon the subject, said that, from the time of the whistle to the fright of the horse was a couple of seconds. Mrs. Orr, describing what happened, said that, as the car "approached the crossing, it gave two shrill whistles, and immediately the horse became frightened, and plunged and reared, and became unmanageable, and I threw up my hand as a signal for the car to stop,......and it came onward with a great noise and ran past it, and as soon as the car passed it, and the horse saw the car, at that instant she bolted over the fence and landed on the top of a cherry tree." The speed of the car, as fixed by Henry W. Orr, was twenty miles an hour. Orr was driving a young horse, and that very day, after this accident, she shied at leaves and a log in a public road, about two miles distant, and slipped and fell into a field, from which, with aid from others, it was rescued. Under this state of facts, we were of the opinion that a judgment of nonsuit should be entered and the correctness of that conclusion is now to be determined.

Was the motorman guilty of negligence in whistling at the Kendig Road? Up to that time, there is no evidence that the horse gave any sign of fright, and it was certainly the motorman's duty to signal, as the car approached roads. In Philadelphia Traction Company v. Bernheimer, 125 Pa. 615, PAXSON, C. J., in delivering the opinion of the court, said: "It was not negligence to ring the bell as the car approached Fourth street; it would have been negligence not to have done so"; and in Steiner v. Philadelphia Traction Company, 134 Pa. 199, it was added: "The bell of a traction car is not only

rung at all street crossings, but frequently at other places, to warn persons of its approach. Nor does such ringing necessarily tend to frighten horses. If it did, there would be accidents daily. We have said emphatically that it would be negligence not to ring at a crossing, and the plaintiff would probably have been swift to invoke the benefit of such rule had his injury resulted from an omission to do so. If we now say, or permit a jury to say, that it is negligence to ring at a crossing, what rule would the company or its gripman have to guide them in such cases?" Guided by these authorities, we are forced to conclude that the evidence does not disclose any negligence on the part of the company because the motorman whistled at the road crossing.

The next question is, whether there was excessive speed which caused the accident and made the defendant liable. While the plaintiffs testified that the car ran very fast, the only person that fixed the rate of speed was Mr. Orr, who said that it was running at the rate of twenty miles an hour. We do not think that such a rate on a country road is excessive. Under the act fixing the speed of automobiles, which run, not upon a track, but in the public roadway, where they are liable at all times to meet horses and wagons, and pedestrians, the law has fixed twenty-four miles an hour in the country as the maximum rate of speed. "Electric cars upon suburban roads usually move at a good rate of speed. They run fast, and the fact that they do so is one of the reasons why they exist and are permitted to use the public highways. If they did not move speedily, they would not meet the requirements of the public service, and no inference of negligence is to be drawn from the mere fact that they do so: Yingst v. Lebanon Street Railway Co., 167 Pa. 438; Smith v. Railway Company, 187 Pa. 451; Dunkle v. City Passenger Railway Company, 209 Pa. 125; Condry v. Wilkes-Barre and Wyoming Valley Traction Company, 228 Pa. 270." Hollihan v. Pittsburgh Railways Company, 54 Pa. Superior Ct. 204.

Orr's evidence is, that the car was on the Kendig crossing, and his wife threw out her arm signalling for the motorman to stop, and immediately the car ran by, and the instant the horse got sight of the car, "she dashed to the right and over the fence." In Hollihan v. Pittsburgh Railways Company, 54 Pa. Superior Ct. 204, it appeared that the plaintiff was riding on horseback in the middle of a macadamized road, on a down-grade, after having passed a curve; that a street car, following the plaintiff, rounded the curve and came down the grade at a high rate of speed with its bell ringing at the curve and down the grade; and that the horse showed no sign of fright until the car was nearly opposite to him, when he suddenly wheeled and jumped backward, and his rump came in collision with the corner of the body of the car, just back of the steps leading down from the front of the platform. It was held that judgment should have been entered in favor of the defendant, non obstante veredicto. This case fully discusses all the law upon the subject, and in our judgment, settles the present controversy.

We are of the opinion that no sufficient evidence of negligence was presented upon the trial, and that the judgment of nonsuit was, therefore, properly entered. We accordingly discharge this rule.

Rule discharged.

On the trial the court below ordered nonsuit, which it subsequently refused to take off. Plaintiffs appealed.

*Error assigned,* among others, was in refusing to take off the nonsuit.

*C. E. Montgomery,* for appellants.

*W. U. Hensel,* for appellee.

PER CURIAM, July 1, 1914:
This judgment is affirmed on the opinion of the learn-

ed president judge of the court below, discharging the rule to show cause why the nonsuit should not be stricken off.

---

## Rengier *v.* Kunzler, Appellant.

*Wills—Construction—Words amounting to devise in fee—Precatory words—Act of April 8, 1833, P. L. 249, Sec. 9—Case stated.*

On the hearing of a case stated to determine whether plaintiff had a fee simple title to land which she had agreed to sell to the defendant, it appeared that her title was derived under the following clause of the will of her husband: "I bequeath to my wife, R., My Whole Estate absolute, at her death to do as she knows what I would want her to do with my estate. I want my wife, R., to be one of My Executors, and my brother, J., to be the other one. Everything is to go on the same as when A. lived unless the Executors see otherwise." *Held,* under Section 9 of the Act of April 8, 1833, P. L. 249, the devise was sufficient to pass the fee.

Argued May 19, 1914.   Appeal, No. 165, Jan. T., 1914, from judgment of C. P., Lancaster Co., April T., 1914, No. 69, on case stated in case of Rebecca D. Rengier v. Christian Kunzler.   Before FELL, C. J., BROWN, POTTER, STEWART and MOSCHZISKER, JJ.   Affirmed.

Case stated to determine title to land.   Before LANDIS, P. J.

The opinion of the Supreme Court states the facts.

Judgment for plaintiff.   Defendant appealed.

*Error assigned* was the judgment of the court.

*W. H. Keller,* of *Coyle & Keller,* with him *J. R. Kinzer,* for appellant.

*T. Roberts Appel,* and *Charles G. Baker,* for appellee, were not heard.